# Exhibit 8

| | |
|---|---|
| **From:** | Cruse, William R. |
| **Sent:** | Thursday, October 13, 2022 12:03 PM |
| **To:** | sean@blocknewyork.com; gabe@blocknewyork.com |
| **Cc:** | Flanders, Craig |
| **Subject:** | URGENT: Demand to Cease and Desist Further Violation of the Legal Rights of IPRG |
| **Attachments:** | Cease and Desist Letter to Mashihi_ Kates_ and Block(129748253.1).pdf; Gabe Kate Independent Contractor Agreement.pdf; Sean Mashihi Independent Contractor Agreement.pdf |

Mr. Mashihi and Mr. Kates,

See the attached cease and desist letter.  It is urgent that you or your representative timely respond to this correspondence.


**William R. Cruse** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5447 | C: 267.334.7655  |  F: 215.832.5447 | cruse@blankrome.com

1

# BLANKROME

1271 Avenue of the Americas |New York, NY 10020
blankrome.com

| Phone: | (212) 885-5016 |
|---|---|
| Fax: | (212) 202-7510 |
| Email: | craig.flanders@blankrome.com |

October 13, 2022

**VIA EMAIL AND FEDEX OVERNIGHT DELIVERY**

Mr. Sean Mashihi
Mr. Gabriel Kates
Block Real Estate Group
401 Park Avenue South, 10th Floor
New York, NY 10016
sean@blocknewyork.com
gabe@blocknewyork.com

> Re:     **Demand To Cease And Desist Further
> Violation Of The Legal Rights Of IPRG**

Dear Messrs. Mashihi and Kates:

We represent Investment Property Realty Group (f/k/a Bestreich Realty Group) ("IPRG"). We write to address a very serious set of unlawful activities by Block Real Estate Group ("Block") and each of you, individually, to build a competing real estate brokerage through violations of your contractual obligations not to solicit IPRG personnel, theft of IPRG's confidential, proprietary, and trade secret business information, and usurpation of IPRG's business relationships and opportunities. Our client takes these matters extremely seriously and its investigation into your unlawful actions is ongoing. If you have legal counsel, please provide their contact information.

Since the outset of your departure from IPRG and formation of Block (whose acronym, "BREG," is *very* similar to the "BRG" acronym of Bestreich Realty Group), IPRG has warned you against violating your post-employment obligations to IPRG, including without limitation the Non-Interference, Confidentiality, and Broker Property provisions of your respective Sales Associate Independent Contractor Agreements with IPRG (the "IC Agreement"). As set forth in the enclosed copies of your IC Agreements, you are prohibited for a period of twelve (12) months following the termination of your employment with IPRG from:

> [D]irectly or indirectly solicit[ing], employ[ing], or otherwise engag[ing] as
> an employee, independent contractor, or otherwise, any person who is or
> was an employee of [IPRG] at any time during the term of this Agreement
> or in any matter induc[ing] or attempt[ing] to induce any employee of

# BLANKROME

October 13, 2022
Page 2

> [IPRG] to terminate his or her employment with [IPRG]; or (ii) interfere[ing] with [IPRG's] relationship with any person who during the term of this Agreement was an employee or independent contractor of [IPRG].

Agreement, ¶ 11(b).

Each of you are further prohibited under the IC Agreement from possessing, using, or disclosing any of IPRG's Confidential Information and Proprietary Items, as those terms are defined in IC Agreement Section 10 ("Confidentiality") and Section 13 ("Broker Property"). Pursuant to Section 13 ("Indemnification") of the IC Agreement, you agreed to reimburse IPRG for any losses, including its attorney's fees and costs, incurred as a result of any breach by you of the IC Agreement.

Despite these warnings, you have continued to flout these obligations by soliciting and hiring away IPRG brokers and soliciting others to join Block and/or otherwise terminate their employment with IPRG. Even more shocking, IPRG has recently learned that immediately before your resigned from IPRG, you and others acting in concert with each of you clandestinely and unlawfully obtained without authorization exports of sensitive and proprietary data and other records, compilations of property and market information, including information from IPRG's valuable, proprietary and trade secret database, and other IPRG Confidential Information and Proprietary Items (as those terms are defined in the IC Agreement). You lacked rights to this data and, even if you had rights to it, you had no right under the IC Agreement or under federal and state common and statutory law to steal this valuable information from IPRG.

Your conduct subjects you and Block to significant legal exposure. These unlawful actions by you, Block, and those acting in concert with you, are grounds for IPRG to bring legal action against you for, among other potential grounds, breach of contract, misappropriation of trade secrets, conversion, aiding and abetting breach of fiduciary duty, and tortious interference with business relations, among other federal state statutory and common law claims for which you and Block will be held liable for compensatory damages, punitive damages, and reimbursement of IPRG's attorney's fees and costs of suit. In addition to these civil ramifications (which will be fully explored), theft of IPRG's valuable business information is a criminal felony which may be reported to responsible federal, state, and local authorities.

IPRG hereby demands that each of you and Block:

1. Immediately cease and desist from any further violations of any agreement with IPRG or its employees and/or contractors, including, without limitation, the IC Agreement.

# BLANKROME

October 13, 2022
Page 3

2. Immediately cease and desist from any further efforts to solicit IPRG brokers and employees for the full duration of the 12-month restricted period stated in the IC Agreement; and

3. Produce sworn affidavits under oath from each of you containing:

   a. Confirming immediate compliance with Nos. 1 and 2 above and the steps taken to carry out that cease and desist.

   b. Detailed identification of all IPRG Confidential Information (whether in hardcopy or electronic format), including, without limitation, IPRG Confidential Information currently or at any time since July 5, 2022 in the possession, custody, or control of you, Block, and/or Block employees, contractors, representatives, or agents.

   c. Detailed identification of all listings, proposed listings, offers, and/or actual or proposed real estate brokerage transactions, in which each of you and/or Block have used or otherwise relied, directly or indirectly, upon IPRG Confidential Business Information.

   d. Detailed identification of all listings, proposed, listings, offers, and/or actual or proposed real estate brokerage transactions each of you and Block have been involved with since July 5, 2022.

   e. Identification of every person and entity who you have provided or exposed IPRG Confidential Information to, and the date of such conveyance and/or exposure.

   f. If it is your position that currently and since your termination of employment with IPRG you have no such IPRG Confidential Business Information, confirmation that neither Block nor any Block employee, contractor, representative, or agent possesses or controls any IPRG Confidential Information.

   g. Representation by Messrs. Mashihi and Kates on behalf of themselves and Block stating that they will immediately cease and desist from any further efforts to obtain IPRG's proprietary, confidential, and trade secret information, including without limitation the IPRG Confidential Information.

# BLANKROME

October 13, 2022
Page 4

    4.   Proposed steps to ensure and independently confirm that IPRG's Confidential Information in your possession has been destroyed and returned in all forms

Absent satisfactory compliance with these demands by **Tuesday, October 18, 2022**, IPRG will be compelled to promptly initiate legal action against you, Block, and any others acting in concert.  Our client is prepared to prosecute their rights and your obligations to the fullest extent of the law and reserve all rights while waiving none.

*    *    *

In anticipation of litigation, you are directed to take immediate steps to preserve and hold information related to the above.

Should litigation begin, there will be a period of time called "discovery," during which the parties are obligated to locate and turn over various documents and pieces of information to each other. During the discovery phase of the litigation, we may seek various documents and other items, including paper documents and electronically stored information ("ESI") that may be available on your computers, telephones and other electronic storage media. The types of information we may request during discovery include letters, emails (e.g., Microsoft Outlook folders), faxes, text messages, memoranda, spreadsheets, word processing documents (e.g., Microsoft Word documents), presentations (e.g., Microsoft PowerPoint files) meeting agendas, accounting and financial documents (e.g., QuickBooks files), meeting minutes, calendar entries (e.g., employees' desk calendars, personal planners and Microsoft Outlook calendars), voicemail messages, graphs and charts created by project management software (e.g., Microsoft Project files), and personal data assistants (e.g., BlackBerrys, iPhones and Treos).

It is crucial that you take steps now to preserve this information. If you do not preserve this information from destruction, it is possible that a court may impose sanctions for 'spoliation' of evidence.

You are directed to immediately do the following with respect to all documents and ESI pertaining in any way to this dispute, including, without limitation, any communications with present or former IPRG employees, any IPRG business information in your or Block's possession, custody or control, and any documents or communications about IPRG, recruitment of IPRG employees, or IPRG business information. If you are not certain whether a particular document or piece of ESI pertains to one of those categories, assume that it does.

1.   <u>Prevent documents and information from being deleted</u>.

     a.   <u>Suspend all automatic data deletion</u>. Many email management software programs

**BLANKROME**

October 13, 2022
Page 5

will auto-delete messages after a certain period of time. You need to suspend these auto-delete functions. If your company has a document retention policy that includes deleting electronic information after a certain period of time, you must stop this deletion.

b. <u>Do not discard paper files or documents</u>. If you have more than one copy of a paper document and any of the copies contain unique information (for example, someone has made notes on a document or highlighted portions of it), you need to preserve all copies.

c. <u>Do not throw away broken equipment</u>. This means you should not discard old computers or personal data assistants ("PDAs"), even if they are no longer functional.

d. <u>Do not delete ESI or other data</u>. This includes information stored on your computer or other electronic storage devices (e.g., laptops, desktops, hard drives, flash drives, backup tapes, CDs, DVDs, zip drives and PDAs). Keep in mind that electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Thus, even if you have a paper copy of a document, you need to preserve all electronic forms of that document.

e. <u>Do not delete voicemails or emails</u>.

2. <u>Prevent documents and information from being altered</u>.

a. Do not erase any hard drives.

b. Do not de-fragment your hard drives.

c. Do not recycle your back-up tapes.

d. Do not compress or optimize data. Some computers have automatic data compression or optimization routines. If yours does, you need to suspend these routines.

e. Do not delete internet cookies, browser history or favorites.

f. Do not re-issue laptop computers or workstation hard drives.

g. Do not run any disk "clean-up" processes.

# BLANKROME

October 13, 2022
Page 6

3.  Remove computers and hard drives from use. Even continuing to use your computer and electronic storage devices can result in the destruction of certain data; therefore, we recommend having forensic images of your computer and other electronic storage devices made, to the extent you cannot stop using them.

4.  Preserve all passwords, access codes and ID names.

5.  Preserve information about how you keep information. Retain all documents that contain your backup and/or archive policies and procedures, your document retention policies, the names of the backup or archive software you use, and the names and addresses of any offsite storage providers that you use.

6.  Create an activity log. Preserve logs of network use by any individuals that might be relevant to the litigation and preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, forensically-qualified image copy of the storage media of each computer hard drive, workstation, and/or network server in your control or custody, whether it is currently in use or not. You will need to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data described above.

Should you have any further questions, please contact the undersigned.

Regards,

*/s/ Craig M. Flanders*
Craig M. Flanders
Partner


Encl.
cc:     William R. Cruse, Esq.

## SALES ASSOCIATE INDEPENDENT CONTRACTOR AGREEMENT
### (Non-Members)

THIS SALES ASSOCIATE INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement"), dated December 12, 2017, is entered into by and between Gabriel Kates residing at 145 East 16th Street, Apt. 6N, New York, NY 10003 (hereinafter referred to as the "Sales Associate") and Bestreich Realty Group, LLC having a principal place of business 225 Broadway, Suite 860, New York, NY 10007 (hereinafter referred to as the "Broker").

**WHEREAS**, Sales Associate and Broker are each respectively duly licensed pursuant to Article 12-A of the Real Property Law of the State of New York and/or other applicable law; and

**WHEREAS**, the parties hereto have freely and voluntarily entered into this Agreement, without duress.

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements set forth herein, Sales Associate and Broker agree as follows:

1.    Definitions. For purposes of this Agreement the term "Broker" shall include individual real estate brokers, real estate brokerage companies, real estate brokerage corporations and any other entity acting as a principal broker and the term "Sales Associate" shall include real estate sales associates and real estate brokers, who, as real estate licensees, associate with and place their real estate license with a principal broker.

2.    Services. Sales Associate is engaged as an independent contractor associated with Broker pursuant to Article 12-A of the Real Property Law and shall be treated as such for all purposes, including but not limited to federal and state income taxation, withholding tax regulations, unemployment insurance and workers' compensation coverages.

3.    Commissions.

(a)    Generally. Subject to the terms set forth in Broker's policy concerning commission payments as may be in effect from time to time, Sales Associate (i) shall be paid a commission on Sales Associate's gross sales, if any, without deduction for taxes, which commission shall be directly related to sales or other output; (ii) shall not be entitled to a draw against commissions; (iii) shall not receive any remuneration related to the number of hours worked; and (iii) shall not be treated as an employee with respect to such services for federal and state income tax purposes.

(b)    Commission Percentage/Amount. Subject to any agreed upon fee split arrangements or team agreements for any given transaction, Sales Associate is eligible for a commission of up to a maximum of sixty percent (60%) of the Broker Fee. BRG shall retain the remaining forty percent (40%) of the Broker Fee. The "Broker Fee" is defined as the percentage or amount of the sales price, or exchange value, payable in cash upon the close of escrow/settlement of the property agreed upon by Broker and the designated party in any transaction.

(c)    Commissions Earned; Payment Schedule.

(i)    A commission shall not be deemed "earned" until, and unless, the transaction has been closed and the Broker Fee has cleared the Broker's bank account. The term "closed" means "close of escrow/settlement, or recordation of the deed, or execution of contract of sale, joint

1

venture agreement, or partnership agreement, etc., which has the effect of changing the legal or equitable ownership of real property."

(ii)    Commission payments are made on a bi-weekly basis. Commissions will be paid on the regularly scheduled commission payment day immediately following the date the commission is earned.

(d)    Effect of Termination. In the event of termination of this Agreement, all commissions earned will be paid within five (5) business days after termination or after they become due in the case of commissions not yet due when the Agreement is terminated or as otherwise required by applicable law or ordinance.

4.    Facilities; Equipment; Expenses. Broker may provide office facilities and supplies for the use of Sales Associate. All other expenses, including but not limited to automobile, travel, and entertainment expenses shall be borne by Sales Associate.

5.    Relationship of the Parties.

(a)    Sales Associate shall be an independent contractor of Broker, and nothing in this Agreement, or in the course of dealing between Sales Associate and Broker shall be deemed to create between Sales Associate or Sales Associate's employees, partners, members, officers and directors, on the one hand, and Broker, on the other hand, a partnership, joint venture, association, franchise, employment relationship or any other relationship, other than that of independent contractors with respect to each other.

(b)    Sales Associate shall be solely responsible for: (i) the payment of all federal, state and local taxes and all appropriate deductions or withholdings; (ii) the payment or provision of any unemployment insurance benefits; state disability benefits; workers' compensation insurance benefits; vacation pay, salary or hourly compensation; overtime and/or holiday pay; health, medical, dental or group insurance; and any pension or profit sharing; (iii) obtaining any applicable business or commercial licenses; and (iv) paying all taxes and other obligations arising from the Commission paid to Sales Associate hereunder. Sales Associate shall be responsible for, and shall indemnify Broker against, all such taxes or contributions, including penalties and interest. Any persons employed by Sales Associate in connection with the performance of the Services shall be solely Sales Associate's employees and Sales Associate shall be fully responsible for such employees.

(c)    Sales Associate shall be permitted to work such hours as Sales Associate may elect to work.

(d)    Sales Associate shall be permitted to work out of Sales Associate's residence or the offices of Broker or any other location in the sole discretion of Sales Associate.

(e)    Sales Associate shall be free to engage in outside employment.

6.    Training. Broker may offer initial training and hold periodic sales meetings. The attendance by Sales Associate at such sessions shall be at the option of Sales Associate.

7.     Leads.  Broker may elect, but shall be under no obligation, to assign leads to Sales Associate on a rotating basis.  Sales Associate shall be responsible for procuring Sales Associate's own leads.

8.     Compliance.

(a)     Broker and Sales Associate shall comply with the requirements of Article 12-A of the Real Property Law and the regulations pertaining thereto. Such compliance shall not affect Sales Associate's status as an independent contractor nor shall such compliance be construed as an indication that Sales Associate is an employee of Broker for any purpose whatsoever.

(b)     Sales Associate acknowledges and agrees to comply with Broker's policies and procedures as may be in effect from time to time, including without limitation, the Broker Policy Manual. To the extent that a conflict exists between this Agreement and any of Broker's written policy or procedure, the written policy or procedure shall control.

(c)     Sales Associate represents and warrants that: (i) Sales Associate has the right to enter into this Agreement, to grant the rights granted herein and to perform fully all of Sales Associate's obligations in this Agreement; (ii) Sales Associate's entering into this Agreement with Broker and performance of the services under this Agreement does not and will not conflict with or result in any breach or default under any other agreement to which Sales Associate is subject; and (iii) Sales Associate is duly authorized and licensed to sell real estate pursuant to Article 12-A of the Real Property Law of the State of New York and/or other applicable law.

9.     Termination.  This Agreement and the association created hereby may be terminated by either party hereto at any time upon written notice given by one party to the other.

10.     Confidentiality.

(a)     Sales Associate shall not use or disclose, or authorize any other person or entity to use or disclose, any of Broker's Confidential Information (defined below), other than as necessary to further the business objectives of Broker.  Broker's obligations under this Section shall survive the termination of this Agreement or any provision hereof or thereof.

(b)     For purposes of this Agreement, "Confidential Information" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, materials, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, fee splitting arrangements, team fee split agreements, territorial fee arrangements, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, client information, client lists, manufacturing information, factory lists, distributor lists, and buyer lists of Broker or its businesses, or of any other person or entity

3

that has entrusted information to Broker in confidence. Sales Associate understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

11.    Non-Interference.

(a)    Sales Associate acknowledges, agrees, represents and warrants that Broker has spent significant resources on and disclosed Broker's Confidential Information in the development of Broker's relationships with employees and independent contractors and that such relationships provide Broker with a substantial competitive advantage.

(b)    To facilitate Broker's protection of its investment in its relationships with its independent contractors and employees, during the term of this Agreement and for a period of twelve (12) months thereafter, Sales Associate agrees and covenants not to (i) directly or indirectly solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of Broker at any time during the term of this Agreement or in any manner induce or attempt to induce any employee of Broker to terminate his or her employment with Broker; or (ii) interfere with the Broker's relationship with any person who during the term of this Agreement was an employee, or independent contractor of Broker.

12.    Broker Property. Sales Associate shall not remove from Broker's premises (except to the extent such removal is for purposes of the performance of the Services, or except as otherwise specifically authorized by Broker) any document, record, notebook, plan, device, or computer software or code, whether embodied in a disk or in any other form (collectively, the "Proprietary Items"). Sales Associate recognizes that, as between Broker and Sales Associate, all of the Proprietary Items, whether or not developed by Sales Associate, are the exclusive property of Broker. Upon termination of this Agreement by either party, or upon the request of Broker, Sales Associate shall return to Broker all of the Proprietary Items in Sales Associate's possession or subject to Sales Associate's control, and Sales Associate shall not retain any copies, reproductions, abstracts, sketches, or other physical embodiment of any of the Proprietary Items.  During and after the performance of services for the Company, you agree that all memoranda, notes, lists, data, records, property and any other tangible products and documents (and all copies thereof) made, produced or compiled by you or made available to you concerning the business of the Company, including any electronic data  brought by you to the Company that has been modified and/or integrated into the Company's records, shall be the Company's sole property and shall be delivered to the Company at any time on request. Notwithstanding the above, the identity of any client contacts brought with you to the Company shall not be the Company's property.

13.    Indemnification.

(a)    Sales Associate shall defend, indemnify and hold harmless Broker and its affiliates and their members, officers, directors, employees, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from: (i) bodily injury, death of any person or damage to real or tangible, personal property resulting from Sales Associate's acts or omissions; and (ii) Sales Associate's breach of any representation, warranty or obligation under this Agreement.

(b)    Broker may satisfy such indemnity (in whole or in part) by way of deduction from any payment due to Sales Associate to the extent permitted under applicable law.

4

(c) You represent and warrant to the Company that the performance of your duties for the Company will not conflict with or result in a violation or breach of, or constitute a default under, any contract, agreement or understanding to which you are or were a party or of which you are otherwise aware and that there are no restrictions, covenants, agreements or limitations on your right or ability to enter into and perform the terms of this Agreement.  In the event that any allegation, claim, action, suit or demand is made against the Company or its members that alleges conduct that may be in breach of this warranty, or otherwise arises out of or is related to any violation of a restrictive covenant or policy with your prior employer (or such employer's employees or contractors), or disclosure or utilization of any confidential or proprietary information from your prior places of employment, then you agree to: indemnify, defend, and hold harmless the Company and its members from any and all allegations, claims, actions, suits, demands, damages, liabilities, obligations, losses, settlements, judgments, costs and expenses (including reasonable attorneys' fees) incurred by the Company and its members in the defense of any such allegation, claim, action, suit or demand.  The Company, together with its members, shall be entitled to employ and be reimbursed for the fees and disbursements, counsel of its own choosing, separate from any counsel chosen by you, in connection with any claim covered by this provision.

14.   Governing Law.  This Agreement shall be governed by the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

15.   Dispute Resolution.

(a)   Commission Based Disputes.  Any controversy, dispute or claim arising out of or relating to a commission payment under this Agreement shall first be settled through good faith negotiations between Sales Associate and Broker. If the dispute cannot be settled through negotiation, the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS.  If the parties are unsuccessful at resolving the dispute through mediation, any controversy, dispute or claim arising out of or relating to a commission payment under this Agreement shall be determined by arbitration in New York, New York before one arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules or pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction.  This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

(b)   Non-Commission Based Disputes.  All disputes arising out of or in connection with this Agreement that do not otherwise concern a dispute over a commission payment shall be submitted to the exclusive jurisdiction of the federal or state courts having jurisdiction in New York County, New York. The parties to this Agreement hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon *forum non conveniens*.  EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

16.     <u>Amendment, Modification, Waiver.</u> Except as otherwise set forth in this Agreement, no provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by Sales Associate and by a duly authorized representative of Broker. The failure of either party to enforce at any time any term of this Agreement, or to exercise any right herein shall in no way operate as a waiver thereof, nor shall any single or partial exercise preclude any other right or option herein, and no waiver whatsoever shall be valid unless in writing, signed by the waiving party, and only to the extent set forth.

17.     <u>Successors and Assigns.</u>

        (a)     <u>Assignment by Broker</u>.  Broker may assign this Agreement to any subsidiary or corporate affiliate or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of Broker. This Agreement shall inure to the benefit of Broker and permitted successors and assigns.

        (b)     <u>No Assignment by Sales Associate</u>. Sales Associate may not assign this Agreement or any part hereof. Any purported assignment by Sales Associate shall be null and void from the initial date of purported assignment.

18.     <u>Notices</u>.  All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by facsimile (with written confirmation of receipt), (c) sent by electronic mail, or (d) received by the addressee, if sent by a recognized delivery service, in each case to the appropriate addresses, electronic mail addresses and facsimile numbers set forth below (or to such other addresses and facsimile numbers as a party may designate by notice to the other parties pursuant to this Section):

    If to Broker, to:  Derek Bestreich, 225 Broadway, Ste 860, New York, NY 10007 or
    dbestreich@brg-cre.com

    If to Sales Associate, to:  Gabriel Kates, 145 East 16th Street, Apt 6N, New York, NY 10007 or
    katesg94@gmail.com

19.     <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement, and supersedes all prior agreements of the parties hereto relating to the subject matter hereof, and there are no written or oral terms or representations made by either party other than those contained herein.

20.     <u>Severability</u>.  If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction or arbitral board, the other provisions of this Agreement will remain in full force and effect.  Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

21.     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

22.     <u>Construction</u>.  The parties acknowledge that this Agreement is the result of arm's-length negotiations between sophisticated parties each afforded representation by legal counsel.  Each and every provision of this Agreement shall be construed as though both parties participated equally in the drafting

of same, and any rule of construction that a document shall be construed against the drafting party shall not be applicable to this Agreement.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

**BROKER:**

BESTREICH REALTY GROUP, LLC

By:
Name: Derek Bestreich
Title: President
Date: 12/7/2017

**SALES ASSOCIATE:**

By:
Name: Gabriel Kates
Date: 12 / 7 / 2017

8

## SALES ASSOCIATE INDEPENDENT CONTRACTOR AGREEMENT

### (Non-Members)

THIS SALES ASSOCIATE INDEPENDENT CONTRACTOR AGREEMENT (this "Agreement"), dated **February 22, 2021**, is entered into by and between **Sean Mashihi** residing at **266 East 78th Street #15 New York, NY 10075** (hereinafter referred to as the "Sales Associate") and Bestreich Realty Group, LLC having a principal place of business at 45 Broadway 29th Floor New York, NY 10006 (hereinafter referred to as the "Broker").

**WHEREAS**, Sales Associate and Broker are each respectively duly licensed pursuant to Article 12-A of the Real Property Law of the State of New York and/or other applicable law; and

**WHEREAS**, the parties hereto have freely and voluntarily entered into this Agreement, without duress.

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements set forth herein, Sales Associate and Broker agree as follows:

1. <u>Definitions</u>. For purposes of this Agreement the term "Broker" shall include individual real estate brokers, real estate brokerage companies, real estate brokerage corporations and any other entity acting as a principal broker and the term "Sales Associate" shall include real estate sales associates and real estate brokers, who, as real estate licensees, associate with and place their real estate license with a principal broker.

2. <u>Services</u>. Sales Associate is engaged as an independent contractor associated with Broker pursuant to Article 12-A of the Real Property Law and shall be treated as such for all purposes, including but not limited to federal and state income taxation, withholding tax regulations, unemployment insurance and workers' compensation coverages.

3. <u>Commissions</u>.

1.     <u>Generally</u>. Subject to the terms set forth in Broker's policy concerning commission payments as may be in effect from time to time, Sales Associate (i) shall be paid a commission on Sales Associate's gross sales, if any, without deduction for taxes, which commission shall be directly related to sales or other output; (ii) shall not be entitled to a draw against commissions; (iii) shall not receive any remuneration related to the number of hours worked; and (iii) shall not be treated as an employee with respect to such services for federal and state income tax purposes.

2.     <u>Commission Percentage/Amount</u>. Subject to any agreed upon fee split arrangements or team agreements for any given transaction, Sales Associates with Associate title, which is defined as less than 3-years' experience with the firm and less than 10 transactions generated, are eligible for a commission of up to a maximum of Fifty percent (50%) of the Broker Fee and BRG shall retain the remaining 50% of the Broker Fee. Subject to any agreed upon fee split arrangements or team agreements for any given transaction, Sales Associates with Senior Associate title, which is defined as less than 5-years' experience with the firm but more than 3-years' experience with the firm and less than 20 transactions generated, are eligible for a commission of up to a maximum of Fifty Five percent (55%) of the Broker Fee and BRG shall retain the remaining 45% of the Broker Fee. Subject to any agreed upon fee split arrangements or team agreements for any given transaction, Sales Associates with Vice President title, which is defined as less than 7-years' experience with the firm but more than 5-years' experience with the firm and less than 30 transactions generated, are eligible for a commission of up to a maximum of Sixty percent (60%) of the Broker Fee and BRG shall retain the remaining 40% of the Broker Fee. Subject to any agreed upon fee split arrangements or team agreements for any given transaction, Sales Associates with Director title, which is defined as less than 10-years' experience with the firm but more than 7-years' experience with the firm and less than 50 transactions generated, are eligible for a commission of up to a maximum of Sixty percent (60%) of the Broker Fee and BRG shall retain the remaining 40% of the Broker Fee. Subject to any agreed upon fee split arrangements or team agreements for any given transaction, Sales Associates with Managing Director title, which is defined as 10-years' experience with the firm and over 50 transactions generated, are eligible for a commission of up to a maximum of Sixty percent (60%) of the Broker Fee and BRG shall retain the remaining 40% of the Broker Fee. Agents hired by the firm prior to January 1, 2019 are grandfathered in as 60% - 40% splits with the Firm's Fee in favor of the agents. Titles may be adjusted in sole and absolute discretion of Supermajority consent of BRG Voting Partners as defined by the BRG Operating Agreement. The "Broker Fee" is defined as the percentage or amount of the sales price, or exchange value, payable in cash upon the close of escrow/settlement of the property agreed upon by Broker and the designated party in any transaction.

3.     <u>Commissions Earned; Payment Schedule</u>.

1.     A commission shall not be deemed "earned" until, and unless, the transaction has been closed and the Broker Fee has cleared the Broker's bank account. The term "closed" means "close of escrow/settlement, or recordation of the deed, or execution of contract of sale, joint venture agreement, or partnership agreement, etc., which has the effect of changing the legal or equitable ownership of real property."

2.      Commission payments are made on a bi-weekly basis. Commissions will be paid on the regularly scheduled commission payment day immediately following the date the commission is earned.

4.      Effect of Termination. In the event of termination of this Agreement, all commissions earned will be paid within five (5) business days after termination or after they become due in the case of commissions not yet due when the Agreement is terminated or as otherwise required by applicable law or ordinance.

4.      Facilities; Equipment; Expenses. Broker may provide office facilities and supplies for the use of Sales Associate. All other expenses, including but not limited to automobile, travel, and entertainment expenses shall be borne by Sales Associate.

5.      Relationship of the Parties.

1.      Sales Associate shall be an independent contractor of Broker, and nothing in this Agreement, or in the course of dealing between Sales Associate and Broker shall be deemed to create between Sales Associate or Sales Associate's employees, partners, members, officers and directors, on the one hand, and Broker, on the other hand, a partnership, joint venture, association, franchise, employment relationship or any other relationship, other than that of independent contractors with respect to each other.

2.      Sales Associate shall be solely responsible for: (i) the payment of all federal, state and local taxes and all appropriate deductions or withholdings; (ii) the payment or provision of any unemployment insurance benefits; state disability benefits; workers' compensation insurance benefits; vacation pay, salary or hourly compensation; overtime and/or holiday pay; health, medical, dental or group insurance; and any pension or profit sharing; (iii) obtaining any applicable business or commercial licenses; and (iv) paying all taxes and other obligations arising from the Commission paid to Sales Associate hereunder. Sales Associate shall be responsible for, and shall indemnify Broker against, all such taxes or contributions, including penalties and interest. Any persons employed by Sales Associate in connection with the performance of the Services shall be solely Sales Associate's employees and Sales Associate shall be fully responsible for such employees.

3.      Sales Associate shall be permitted to work such hours as Sales Associate may elect to work.

3

4.      Sales Associate shall be permitted to work out of Sales Associate's residence or the offices of Broker or any other location in the sole discretion of Sales Associate.

5.      Sales Associate shall be free to engage in outside employment.

6.      <u>Training</u>.  Broker may offer initial training and hold periodic sales meetings.  The attendance by Sales Associate at such sessions shall be at the option of Sales Associate.

7.      <u>Leads</u>.  Broker may elect, but shall be under no obligation, to assign leads to Sales Associate on a rotating basis.  Sales Associate shall be responsible for procuring Sales Associate's own leads.

8.      <u>Compliance</u>.

1.      Broker and Sales Associate shall comply with the requirements of Article 12-A of the Real Property Law and the regulations pertaining thereto. Such compliance shall not affect Sales Associate's status as an independent contractor nor shall such compliance be construed as an indication that Sales Associate is an employee of Broker for any purpose whatsoever.

2.      Sales Associate acknowledges and agrees to comply with Broker's policies and procedures as may be in effect from time to time, including without limitation, the Broker Policy Manual.  To the extent that a conflict exists between this Agreement and any of Broker's written policy or procedure, the written policy or procedure shall control.

3.      Sales Associate represents and warrants that: (i) Sales Associate has the right to enter into this Agreement, to grant the rights granted herein and to perform fully all of Sales Associate's obligations in this Agreement; (ii) Sales Associate's entering into this Agreement with Broker and performance of the services under this Agreement does not and will not conflict with or result in any breach or default under any other agreement to which Sales Associate is subject; and (iii) Sales Associate is duly authorized and licensed to sell real estate pursuant to Article 12-A of the Real Property Law of the State of New York and/or other applicable law.

9.     Termination. This Agreement and the association created hereby may be terminated by either party hereto at any time upon written notice given by one party to the other.

10.     Confidentiality.

1.     Sales Associate shall not use or disclose, or authorize any other person or entity to use or disclose, any of Broker's Confidential Information (defined below), other than as necessary to further the business objectives of Broker.  Broker's obligations under this Section shall survive the termination of this Agreement or any provision hereof or thereof.

2.     For purposes of this Agreement, "Confidential Information" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, materials, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, fee splitting arrangements, team fee split agreements, territorial fee arrangements, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, client information, client lists, manufacturing information, factory lists, distributor lists, and buyer lists of Broker or its businesses, or of any other person or entity that has entrusted information to Broker in confidence. Sales Associate understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

11.     Non-Interference.

1.     Sales Associate acknowledges, agrees, represents and warrants that Broker has spent significant resources on and disclosed Broker's Confidential Information in the development of Broker's relationships with employees and independent contractors and that such relationships provide Broker with a substantial competitive advantage.

2.      To facilitate Broker's protection of its investment in its relationships with its independent contractors and employees, during the term of this Agreement and for a period of twelve (12) months thereafter, Sales Associate agrees and covenants not to (i) directly or indirectly solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of Broker at any time during the term of this Agreement or in any manner induce or attempt to induce any employee of Broker to terminate his or her employment with Broker; or (ii) interfere with the Broker's relationship with any person who during the term of this Agreement was an employee, or independent contractor of Broker.

12.     <u>Broker Property</u>.  Sales Associate shall not remove from Broker's premises (except to the extent such removal is for purposes of the performance of the Services, or except as otherwise specifically authorized by Broker) any document, record, notebook, plan, device, or computer software or code, whether embodied in a disk or in any other form (collectively, the "Proprietary Items"). Sales Associate recognizes that, as between Broker and Sales Associate, all of the Proprietary Items, whether or not developed by Sales Associate, are the exclusive property of Broker.  Upon termination of this Agreement by either party, or upon the request of Broker, Sales Associate shall return to Broker all of the Proprietary Items in Sales Associate's possession or subject to Sales Associate's control, and Sales Associate shall not retain any copies, reproductions, abstracts, sketches, or other physical embodiment of any of the Proprietary Items.  During and after the performance of services for the Company, you agree that all memoranda, notes, lists, data, records, property and any other tangible products and documents (and all copies thereof) made, produced or compiled by you or made available to you concerning the business of the Company, including any electronic data  brought by you to the Company that has been modified and/or integrated into the Company's records, shall be the Company's sole property and shall be delivered to the Company at any time on request. Notwithstanding the above, the identity of any client contacts brought with you to the Company shall not be the Company's property.

13.     <u>Indemnification</u>.

1.      Sales Associate shall defend, indemnify and hold harmless Broker and its affiliates and their members, officers, directors, employees, agents, successors and permitted assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from: (i) bodily injury, death of any person or damage to real or tangible, personal property resulting from Sales Associate's acts or omissions; and (ii) Sales Associate's breach of any representation, warranty or obligation under this Agreement.

2.      Broker may satisfy such indemnity (in whole or in part) by way of deduction from any payment due to Sales Associate to the extent permitted under applicable law.

3.   You represent and warrant to the Company that the performance of your duties for the Company will not conflict with or result in a violation or breach of, or constitute a default under, any contract, agreement or understanding to which you are or were a party or of which you are otherwise aware and that there are no restrictions, covenants, agreements or limitations on your right or ability to enter into and perform the terms of this Agreement.  In the event that any allegation, claim, action, suit or demand is made against the Company or its members that alleges conduct that may be in breach of this warranty, or otherwise arises out of or is related to any violation of a restrictive covenant or policy with your prior employer (or such employer's employees or contractors), or disclosure or utilization of any confidential or proprietary information from your prior places of employment, then you agree to: indemnify, defend, and hold harmless the Company and its members from any and all allegations, claims, actions, suits, demands, damages, liabilities, obligations, losses, settlements, judgments, costs and expenses (including reasonable attorneys' fees) incurred by the Company and its members in the defense of any such allegation, claim, action, suit or demand.  The Company, together with its members, shall be entitled to employ and be reimbursed for the fees and disbursements, counsel of its own choosing, separate from any counsel chosen by you, in connection with any claim covered by this provision.

14.   <u>Governing Law</u>.  This Agreement shall be governed by the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

15.   <u>Dispute Resolution</u>.

1.   <u>Commission Based Disputes</u>.  Any controversy, dispute or claim arising out of or relating to a commission payment under this Agreement shall first be settled through good faith negotiations between Sales Associate and Broker. If the dispute cannot be settled through negotiation, the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS.  If the parties are unsuccessful at resolving the dispute through mediation, any controversy, dispute or claim arising out of or relating to a commission payment under this Agreement shall be determined by arbitration in New York, New York before one arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules or pursuant to JAMS' Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction.  This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

2.      Non-Commission Based Disputes.  All disputes arising out of or in connection with this Agreement that do not otherwise concern a dispute over a commission payment shall be submitted to the exclusive jurisdiction of the federal or state courts having jurisdiction in New York County, New York.  The parties to this Agreement hereby irrevocably waive any objection to jurisdiction and venue of any action instituted hereunder and shall not assert any defense based on lack of jurisdiction or venue or based upon *forum non conveniens*.  EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION, PROCEEDING, CAUSE OF ACTION OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

16.      Amendment, Modification, Waiver.  Except as otherwise set forth in this Agreement, no provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by Sales Associate and by a duly authorized representative of Broker.  The failure of either party to enforce at any time any term of this Agreement, or to exercise any right herein shall in no way operate as a waiver thereof, nor shall any single or partial exercise preclude any other right or option herein, and no waiver whatsoever shall be valid unless in writing, signed by the waiving party, and only to the extent set forth.

17.      Successors and Assigns.

1.      Assignment by Broker.  Broker may assign this Agreement to any subsidiary or corporate affiliate or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of Broker. This Agreement shall inure to the benefit of Broker and permitted successors and assigns.

2.      No Assignment by Sales Associate. Sales Associate may not assign this Agreement or any part hereof.  Any purported assignment by Sales Associate shall be null and void from the initial date of purported assignment.

18.      Notices.  All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by facsimile (with written confirmation of receipt), (c) sent by electronic mail, or (d) received by the addressee, if sent by a recognized delivery service, in each case to the appropriate addresses, electronic mail addresses and facsimile numbers set forth below (or to such other addresses and facsimile numbers as a party may designate by notice to the other parties pursuant to this Section):

If to Broker, to:   Derek Bestreich, Bestreich Realty Group LLC, 225 Broadway, Suite 860, New York, NY 10007

If to Sales Associate, to:   _____

19.     Entire Agreement.  This Agreement constitutes the entire agreement, and supersedes all prior agreements of the parties hereto relating to the subject matter hereof, and there are no written or oral terms or representations made by either party other than those contained herein.

20.     Severability.  If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction or arbitral board, the other provisions of this Agreement will remain in full force and effect.  Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

21.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

22.     Construction.  The parties acknowledge that this Agreement is the result of arm's-length negotiations between sophisticated parties each afforded representation by legal counsel.  Each and every provision of this Agreement shall be construed as though both parties participated equally in the drafting of same, and any rule of construction that a document shall be construed against the drafting party shall not be applicable to this Agreement.

*[Signature Page Follows]* Page Break

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

**BROKER:**

BESTREICH REALTY GROUP, LLC

By: _____

Name:  Derek Bestreich

Title: President

**SALES ASSOCIATE:**

By:_____ (Signature)

Name:  Sean Mashihi

Date: ____2|22|21_____

| | |
|---|---|
| **From:** | Cruse, William R. |
| **Sent:** | Thursday, October 13, 2022 12:10 PM |
| **To:** | Seramo97@gmail.com |
| **Cc:** | Flanders, Craig |
| **Subject:** | URGENT: Cease and Desist Violation of the Legal Rights of IPRG |
| **Attachments:** | Cease and Desist Letter to Sarkisian(129748259.1).pdf |

Mr. Sarkisian,

Please see the attached cease and desist letter.  It is urgent that you or your designated representative respond timely to this letter.

**William R. Cruse** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5447 | C: 267.334.7655  |  F: 215.832.5447 | cruse@blankrome.com



1271 Avenue of the Americas |New York, NY 10020
blankrome.com

| Phone: | (212) 885-5016 |
| Fax: | (212) 202-7510 |
| Email: | craig.flanders@blankrome.com |

October 13, 2022

**VIA EMAIL AND FEDEX OVERNIGHT DELIVERY**

Serge Sarkisian
60-34 Gates Avenue
Queens, NY 11385
Serarmo97@gmail.com

      Re:    **Demand To Cease And Desist Further**
                **Violation Of The Legal Rights Of IPRG**

Dear Mr. Sarkisian:

      This firm represents Investment Property Realty Group (f/k/a Bestreich Realty Group) ("IPRG"). We understand that you were involved in efforts to obtain without authorization exports of data from IPRG's valuable, proprietary and trade secret shared-information database. We further understand that you either have been acting alone or in concert with you clandestinely and unlawfully obtained real estate brokerages, misappropriate IPRG's business information, and usurp IPRG's business relationships and opportunities.

      Through your own admissions and separate investigation, IPRG has recently learned that before Mr. Shawah's resignation, you and others acting in concert with you clandestinely and unlawfully obtained without authorization exports of sensitive and proprietary data and other records, compilations of property and market information, including information from IPRG's valuable, proprietary and trade secret database, and other IPRG confidential, proprietary, and trade secret information (the "Confidential Information").

      Be advised that your activities: (i) violate your Confidentiality and Inventions Agreement with IPRG (the "CI Agreement"); (ii) subject you to potential civil liability including, without limitation, for breach of contract, misappropriation of trade secrets, conversion, breach of fiduciary duty, and tortious interference with business relations, among other federal state statutory and common law claims; and (iii) may subject you to criminal liability as well.

# BLANKROME

October 13, 2022
Page 2

IPRG demands that you:

1. Immediately cease and desist from any further violations of any agreement with IPRG or its employees and/or contractors, including, without limitation, the CI Agreement.

2. Produce a sworn affidavit under oath containing:

   a. Confirmation of immediate compliance with No. 1 above and the steps taken to carry out that cease and desist.

   b. Detailed identification of all IPRG Confidential Information (whether in hardcopy or electronic format) currently in your possession, custody, or control.

   c. Detailed identification of all listings, proposed, listings, offers, and/or actual or proposed real estate brokerage transactions, in which you have used or otherwise relied, directly or indirectly upon IPRG Confidential Information for the benefit of others than IPRG.

   d. Identification of every person and entity who you have provided or exposed IPRG Confidential Information to, and the date of such conveyance and/or exposure.

   e. If it is your position that you at no time have had such IPRG Confidential Information, confirmation of the same.

   f. Representation that you will immediately cease and desist from any further efforts to obtain IPRG's proprietary, confidential, and trade secret information, including without limitation the IPRG Confidential Information.

3. Proposed steps to ensure and independently confirm that IPRG's Confidential Information in your possession has been destroyed and returned in all forms

Absent satisfactory compliance with these demands by **Tuesday, October 18, 2022**, IPRG will be compelled to promptly initiate legal action against you and any others acting in concert with you.

\*       \*       \*

In anticipation of litigation, you are directed to take immediate steps to preserve and hold

# BLANKROME

October 13, 2022
Page 3

information related to the above.

Should litigation begin, there will be a period of time called "discovery," during which the parties are obligated to locate and turn over various documents and pieces of information to each other. During the discovery phase of the litigation, we may seek various documents and other items, including paper documents and electronically stored information ("ESI") that may be available on your computers, telephones and other electronic storage media. The types of information we may request during discovery include letters, emails (e.g., Microsoft Outlook folders), faxes, text messages, memoranda, spreadsheets, word processing documents (e.g., Microsoft Word documents), presentations (e.g., Microsoft PowerPoint files) meeting agendas, accounting and financial documents (e.g., QuickBooks files), meeting minutes, calendar entries (e.g., employees' desk calendars, personal planners and Microsoft Outlook calendars), voicemail messages, graphs and charts created by project management software (e.g., Microsoft Project files), and personal data assistants (e.g., BlackBerrys, iPhones and Treos).

It is crucial that you take steps now to preserve this information. If you do not preserve this information from destruction, it is possible that a court may impose sanctions for 'spoliation' of evidence.

You are directed to immediately do the following with respect to all documents and ESI pertaining in any way to this dispute, including, without limitation, any communications with present or former IPRG employees, any IPRG business information in your possession, custody or control, and any documents or communications about IPRG, recruitment of IPRG employees, or IPRG business information. If you are not certain whether a particular document or piece of ESI pertains to one of those categories, assume that it does.

1. Prevent documents and information from being deleted.

    a. Suspend all automatic data deletion. Many email management software programs will auto-delete messages after a certain period of time. You need to suspend these auto-delete functions. If your company has a document retention policy that includes deleting electronic information after a certain period of time, you must stop this deletion.

    b. Do not discard paper files or documents. If you have more than one copy of a paper document and any of the copies contain unique information (for example, someone has made notes on a document or highlighted portions of it), you need to preserve all copies.

    c. Do not throw away broken equipment. This means you should not discard old

# BLANKROME

October 13, 2022
Page 4

computers or personal data assistants ("PDAs"), even if they are no longer functional.

d. <u>Do not delete ESI or other data</u>. This includes information stored on your computer or other electronic storage devices (e.g., laptops, desktops, hard drives, flash drives, backup tapes, CDs, DVDs, zip drives and PDAs). Keep in mind that electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Thus, even if you have a paper copy of a document, you need to preserve all electronic forms of that document.

e. <u>Do not delete voicemails or emails</u>.

2. <u>Prevent documents and information from being altered</u>.

a. Do not erase any hard drives.

b. Do not de-fragment your hard drives.

c. Do not recycle your back-up tapes.

d. Do not compress or optimize data. Some computers have automatic data compression or optimization routines. If yours does, you need to suspend these routines.

e. Do not delete internet cookies, browser history or favorites.

f. Do not re-issue laptop computers or workstation hard drives.

g. Do not run any disk "clean-up" processes.

3. <u>Remove computers and hard drives from use</u>. Even continuing to use your computer and electronic storage devices can result in the destruction of certain data; therefore, we recommend having forensic images of your computer and other electronic storage devices made, to the extent you cannot stop using them.

4. <u>Preserve all passwords, access codes and ID names</u>.

5. <u>Preserve information about how you keep information</u>. Retain all documents that contain your backup and/or archive policies and procedures, your document retention policies, the names of the backup or archive software you use, and the names and addresses of any

# BLANKROME

October 13, 2022
Page 5

offsite storage providers that you use.

6. <u>Create an activity log</u>. Preserve logs of network use by any individuals that might be relevant to the litigation and preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, forensically-qualified image copy of the storage media of each computer hard drive, workstation, and/or network server in your control or custody, whether it is currently in use or not. You will need to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data described above.

Should you have any further questions, please contact the undersigned.

Regards,

*/s/ Craig M. Flanders*
Craig M. Flanders
Partner

Encl.
cc:      William R. Cruse, Esq.

| | |
|---|---|
| **From:** | Cruse, William R. |
| **Sent:** | Thursday, October 13, 2022 12:06 PM |
| **To:** | daniel.shawah@gmail.com |
| **Cc:** | Flanders, Craig |
| **Subject:** | URGENT: Cease and Desist Further Violation of the Legal Rights of IPRG |
| **Attachments:** | Cease and Desist Letter to Shawah(129748260.1).pdf |

Mr. Shawah,

Please see the attached cease and desist letter.  It is urgent that you or your designated representative timely respond.

**William R. Cruse** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5447 | C: 267.334.7655  |  F: 215.832.5447 | cruse@blankrome.com

# BLANK**ROME**

1271 Avenue of the Americas |New York, NY 10020
blankrome.com

| | |
|---|---|
| *Phone:* | *(212) 885-5016* |
| *Fax:* | *(212) 202-7510* |
| *Email:* | *craig.flanders@blankrome.com* |

October 13, 2022

**VIA EMAIL AND FEDEX OVERNIGHT DELIVERY**

Mr. Daniel Shawah
34 Ridgeway Road
Easton, CT 06612
Daniel.shawah@gmail.com

   Re: **Demand To Cease And Desist Further**
      **Violation Of The Legal Rights Of IPRG**

Dear Mr. Shawah:

  This firm represents Investment Property Realty Group (f/k/a Bestreich Realty Group) ("IPRG"). We understand that you were involved in efforts to obtain without authorization exports of data from IPRG's valuable, proprietary and trade secret shared-information database. We further understand that you either have been acting alone or in concert with Block Realty Group ("Block"), Sean Mashihi, and Gabriel Kates to build their competing real estate brokerage, build your own real estate agent business, misappropriate IPRG's business information, and usurp IPRG's business relationships and opportunities.

  IPRG has recently learned that immediately before your resigned from IPRG, you and others acting in concert with you clandestinely and unlawfully obtained without authorization exports of sensitive and proprietary data and other records, compilations of property and market information, including information from IPRG's valuable, proprietary and trade secret database, and other IPRG confidential, proprietary, and trade secret information (the "Confidential Information").

  Be advised that your activities: (i) violate your Sales Associate Independent Contractor Agreements with IPRG (the "IC Agreement"); (ii) subject you to potential civil liability including, without limitation, for breach of contract, misappropriation of trade secrets, conversion, breach of fiduciary duty, and tortious interference with business relations, among other federal state statutory and common law claims; and (iii) may subject you to criminal liability as well.

# BLANKROME

October 13, 2022
Page 2

IPRG demands that you:

1. Immediately cease and desist from any further violations of any agreement with IPRG or its employees and/or contractors, including, without limitation, the IC Agreement.

2. Produce a sworn affidavit under oath containing:

   a. Confirmation of immediate compliance with No. 1 above and the steps taken to carry out that cease and desist.

   b. Detailed identification of all IPRG Confidential Information (whether in hardcopy or electronic format), including, without limitation, IPRG Confidential Information, currently or at any time since October 3, 2022, in your possession, custody, or control.

   c. Detailed identification of all listings, proposed, listings, offers, and/or actual or proposed real estate brokerage transactions, in which you have used or otherwise relied, directly or indirectly upon IPRG Confidential Information.

   d. Detailed identification of all listings, proposed, listings, offers, and/or actual or proposed real estate brokerage transactions you have been involved with since October 3, 2022.

   e. Identification of every person and entity who you have provided or exposed IPRG Confidential Information to, and the date of such conveyance and/or exposure.

   f. If it is your position that you at no time have had such IPRG Confidential Information, confirmation of the same.

   g. Representation that you will immediately cease and desist from any further efforts to obtain IPRG's proprietary, confidential, and trade secret information, including without limitation the IPRG Confidential Information.

3. Proposed steps to ensure and independently confirm that IPRG's Confidential Information in your possession has been destroyed and returned in all forms

Absent satisfactory compliance with these demands by **Tuesday, October 18, 2022**, IPRG will be compelled to promptly initiate legal action against you and any others acting in concert with you.

# BLANKROME

October 13, 2022
Page 3

\*      \*      \*

In anticipation of litigation, you are directed to take immediate steps to preserve and hold information related to the above.

Should litigation begin, there will be a period of time called "discovery," during which the parties are obligated to locate and turn over various documents and pieces of information to each other. During the discovery phase of the litigation, we may seek various documents and other items, including paper documents and electronically stored information ("ESI") that may be available on your computers, telephones and other electronic storage media. The types of information we may request during discovery include letters, emails (e.g., Microsoft Outlook folders), faxes, text messages, memoranda, spreadsheets, word processing documents (e.g., Microsoft Word documents), presentations (e.g., Microsoft PowerPoint files) meeting agendas, accounting and financial documents (e.g., QuickBooks files), meeting minutes, calendar entries (e.g., employees' desk calendars, personal planners and Microsoft Outlook calendars), voicemail messages, graphs and charts created by project management software (e.g., Microsoft Project files), and personal data assistants (e.g., BlackBerrys, iPhones and Treos).

It is crucial that you take steps now to preserve this information. If you do not preserve this information from destruction, it is possible that a court may impose sanctions for 'spoliation' of evidence.

You are directed to immediately do the following with respect to all documents and ESI pertaining in any way to this dispute, including, without limitation, any communications with present or former IPRG employees, any IPRG business information in your possession, custody or control, and any documents or communications about IPRG, recruitment of IPRG employees, or IPRG business information. If you are not certain whether a particular document or piece of ESI pertains to one of those categories, assume that it does.

1. <u>Prevent documents and information from being deleted.</u>

   a. <u>Suspend all automatic data deletion.</u> Many email management software programs will auto-delete messages after a certain period of time. You need to suspend these auto-delete functions. If your company has a document retention policy that includes deleting electronic information after a certain period of time, you must stop this deletion.

   b. <u>Do not discard paper files or documents.</u> If you have more than one copy of a paper document and any of the copies contain unique information (for example, someone has made notes on a document or highlighted portions of it), you need to preserve

# BLANKROME

October 13, 2022
Page 4

all copies.

c. <u>Do not throw away broken equipment</u>. This means you should not discard old computers or personal data assistants ("PDAs"), even if they are no longer functional.

d. <u>Do not delete ESI or other data</u>. This includes information stored on your computer or other electronic storage devices (e.g., laptops, desktops, hard drives, flash drives, backup tapes, CDs, DVDs, zip drives and PDAs). Keep in mind that electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Thus, even if you have a paper copy of a document, you need to preserve all electronic forms of that document.

e. <u>Do not delete voicemails or emails</u>.

2. <u>Prevent documents and information from being altered</u>.

a. Do not erase any hard drives.

b. Do not de-fragment your hard drives.

c. Do not recycle your back-up tapes.

d. Do not compress or optimize data. Some computers have automatic data compression or optimization routines. If yours does, you need to suspend these routines.

e. Do not delete internet cookies, browser history or favorites.

f. Do not re-issue laptop computers or workstation hard drives.

g. Do not run any disk "clean-up" processes.

3. <u>Remove computers and hard drives from use</u>. Even continuing to use your computer and electronic storage devices can result in the destruction of certain data; therefore, we recommend having forensic images of your computer and other electronic storage devices made, to the extent you cannot stop using them.

4. <u>Preserve all passwords, access codes and ID names</u>.

# BLANKROME

October 13, 2022
Page 5

5. <u>Preserve information about how you keep information</u>. Retain all documents that contain your backup and/or archive policies and procedures, your document retention policies, the names of the backup or archive software you use, and the names and addresses of any offsite storage providers that you use.

6. <u>Create an activity log</u>. Preserve logs of network use by any individuals that might be relevant to the litigation and preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, forensically-qualified image copy of the storage media of each computer hard drive, workstation, and/or network server in your control or custody, whether it is currently in use or not. You will need to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data described above.

Should you have any further questions, please contact the undersigned.

Regards,

*/s/ Craig M. Flanders*
Craig M. Flanders
Partner

Encl.
cc:    William R. Cruse, Esq.

| | |
|---|---|
| **From:** | Cruse, William R. |
| **Sent:** | Thursday, October 13, 2022 12:08 PM |
| **To:** | j-wacht@lee-associates.c |
| **Cc:** | Flanders, Craig |
| **Subject:** | IPRG Dispute with Lee Associates Broker Shawah |
| **Attachments:** | Notice re Dispute with Daniel Shawah(129748256.1).pdf; REDACTED Cease and Desist Letter to Shawah(129748348.1).pdf |

Mr. Wacht:

Please see the attached letter ("Notice re Dispute with Danile Shawah") sent on behalf of our client Investment Property Realty Group.


**William R. Cruse** | BLANKROME
One Logan Square | 130 North 18th Street | Philadelphia, PA 19103
O: 215.569.5447 | C: 267.334.7655  |  F: 215.832.5447 | cruse@blankrome.com

# BLANK**ROME**

1271 Avenue of the Americas |New York, NY 10020
blankrome.com

| | |
|---|---|
| *Phone:* | *(212) 885-5016* |
| *Fax:* | *(212) 202-7510* |
| *Email:* | *craig.flanders@blankrome.com* |

October 13, 2022

**<u>VIA EMAIL AND FEDEX OVERNIGHT DELIVERY</u>**

Lee & Associates
c/o James Wacht, President
845 Third Avenue, 4th Floor
New York, NY 10022
jwacht@lee-associates.com

    Re:  **Notice of Dispute with Daniel Shawah**

Dear Mr. Wacht:

   This firm represents Investment Property Realty Group (f/k/a Bestreich Realty Group) ("IPRG"). We understand that Lee & Associates has recently employed a former IPRG broker, Daniel Shawah. As set forth in the enclosed letter to Mr. Shawah, IPRG has recently learned that Mr. Shawah was involved in efforts to obtain without authorization exports of data from IPRG's valuable, proprietary and trade secret shared-information database for his own benefit and that of others acting in concert with him. (Note that we have redacted the names of others implicated in this scheme from the copy of IPRG's letter to Mr. Shawah.)

   We write to put Lee & Associates on notice of this issue and of IPRG's ongoing investigation into this matter. We respectfully request that Lee & Associates notify us immediately of any hardcopy or electronically stored information Mr. Shawah has provided to Lee & Associates, as this information may very well be IPRG's confidential, proprietary, and trade secret information obtained unlawfully from IPRG.

   If you or your designated representative would like to discuss this matter in greater detail, please contact me at your earliest convenience. Thank you for your assistance in this matter.

      Sincerely yours,

      */s/ Craig M. Flanders*
      Craig M. Flanders
      Partner

BLANKROME

October 13, 2022
Page 2

Encl.
cc:      William R. Cruse, Esq.

# BLANKROME

1271 Avenue of the Americas |New York, NY 10020
blankrome.com

| | |
|---|---|
| *Phone:* | *(212) 885-5016* |
| *Fax:* | *(212) 202-7510* |
| *Email:* | *craig.flanders@blankrome.com* |

October 13, 2022

**VIA EMAIL AND FEDEX OVERNIGHT DELIVERY**

Mr. Daniel Shawah
34 Ridgeway Road
Easton, CT 06612
Daniel.shawah@gmail.com

> **Re:**   **Demand To Cease And Desist Further
> Violation Of The Legal Rights Of IPRG**

Dear Mr. Shawah:

This firm represents Investment Property Realty Group (f/k/a Bestreich Realty Group) ("IPRG"). We understand that you were involved in efforts to obtain without authorization exports of data from IPRG's valuable, proprietary and trade secret shared-information database. We further understand that you either have been acting alone or in concert with ████████████ p ████████████████████████ to build their competing real estate brokerage, build your own real estate agent business, misappropriate IPRG's business information, and usurp IPRG's business relationships and opportunities.

IPRG has recently learned that immediately before your resigned from IPRG, you and others acting in concert with you clandestinely and unlawfully obtained without authorization exports of sensitive and proprietary data and other records, compilations of property and market information, including information from IPRG's valuable, proprietary and trade secret database, and other IPRG confidential, proprietary, and trade secret information (the "Confidential Information").

Be advised that your activities: (i) violate your Sales Associate Independent Contractor Agreements with IPRG (the "IC Agreement"); (ii) subject you to potential civil liability including, without limitation, for breach of contract, misappropriation of trade secrets, conversion, breach of fiduciary duty, and tortious interference with business relations, among other federal state statutory and common law claims; and (iii) may subject you to criminal liability as well.

# BLANKROME

October 13, 2022
Page 2

IPRG demands that you:

1. Immediately cease and desist from any further violations of any agreement with IPRG or its employees and/or contractors, including, without limitation, the IC Agreement.

2. Produce a sworn affidavit under oath containing:

    a. Confirmation of immediate compliance with No. 1 above and the steps taken to carry out that cease and desist.

    b. Detailed identification of all IPRG Confidential Information (whether in hardcopy or electronic format), including, without limitation, IPRG Confidential Information, currently or at any time since October 3, 2022, in your possession, custody, or control.

    c. Detailed identification of all listings, proposed, listings, offers, and/or actual or proposed real estate brokerage transactions, in which you have used or otherwise relied, directly or indirectly upon IPRG Confidential Information.

    d. Detailed identification of all listings, proposed, listings, offers, and/or actual or proposed real estate brokerage transactions you have been involved with since October 3, 2022.

    e. Identification of every person and entity who you have provided or exposed IPRG Confidential Information to, and the date of such conveyance and/or exposure.

    f. If it is your position that you at no time have had such IPRG Confidential Information, confirmation of the same.

    g. Representation that you will immediately cease and desist from any further efforts to obtain IPRG's proprietary, confidential, and trade secret information, including without limitation the IPRG Confidential Information.

3. Proposed steps to ensure and independently confirm that IPRG's Confidential Information in your possession has been destroyed and returned in all forms

Absent satisfactory compliance with these demands by **Tuesday, October 18, 2022**, IPRG will be compelled to promptly initiate legal action against you and any others acting in concert with you.

# BLANKROME

October 13, 2022
Page 3

\*       \*       \*

In anticipation of litigation, you are directed to take immediate steps to preserve and hold information related to the above.

Should litigation begin, there will be a period of time called "discovery," during which the parties are obligated to locate and turn over various documents and pieces of information to each other. During the discovery phase of the litigation, we may seek various documents and other items, including paper documents and electronically stored information ("ESI") that may be available on your computers, telephones and other electronic storage media. The types of information we may request during discovery include letters, emails (e.g., Microsoft Outlook folders), faxes, text messages, memoranda, spreadsheets, word processing documents (e.g., Microsoft Word documents), presentations (e.g., Microsoft PowerPoint files) meeting agendas, accounting and financial documents (e.g., QuickBooks files), meeting minutes, calendar entries (e.g., employees' desk calendars, personal planners and Microsoft Outlook calendars), voicemail messages, graphs and charts created by project management software (e.g., Microsoft Project files), and personal data assistants (e.g., BlackBerrys, iPhones and Treos).

It is crucial that you take steps now to preserve this information. If you do not preserve this information from destruction, it is possible that a court may impose sanctions for 'spoliation' of evidence.

You are directed to immediately do the following with respect to all documents and ESI pertaining in any way to this dispute, including, without limitation, any communications with present or former IPRG employees, any IPRG business information in your possession, custody or control, and any documents or communications about IPRG, recruitment of IPRG employees, or IPRG business information. If you are not certain whether a particular document or piece of ESI pertains to one of those categories, assume that it does.

1.  Prevent documents and information from being deleted.

    a.  Suspend all automatic data deletion. Many email management software programs will auto-delete messages after a certain period of time. You need to suspend these auto-delete functions. If your company has a document retention policy that includes deleting electronic information after a certain period of time, you must stop this deletion.

    b.  Do not discard paper files or documents. If you have more than one copy of a paper document and any of the copies contain unique information (for example, someone has made notes on a document or highlighted portions of it), you need to preserve

# BLANKROME

October 13, 2022
Page 4

all copies.

    c.  <u>Do not throw away broken equipment</u>. This means you should not discard old computers or personal data assistants ("PDAs"), even if they are no longer functional.

    d.  <u>Do not delete ESI or other data</u>. This includes information stored on your computer or other electronic storage devices (e.g., laptops, desktops, hard drives, flash drives, backup tapes, CDs, DVDs, zip drives and PDAs). Keep in mind that electronic documents and the storage media on which they reside contain relevant, discoverable information beyond that which may be found in printed documents. Thus, even if you have a paper copy of a document, you need to preserve all electronic forms of that document.

    e.  <u>Do not delete voicemails or emails</u>.

2.  <u>Prevent documents and information from being altered</u>.

    a.  Do not erase any hard drives.

    b.  Do not de-fragment your hard drives.

    c.  Do not recycle your back-up tapes.

    d.  Do not compress or optimize data. Some computers have automatic data compression or optimization routines. If yours does, you need to suspend these routines.

    e.  Do not delete internet cookies, browser history or favorites.

    f.  Do not re-issue laptop computers or workstation hard drives.

    g.  Do not run any disk "clean-up" processes.

3.  <u>Remove computers and hard drives from use</u>. Even continuing to use your computer and electronic storage devices can result in the destruction of certain data; therefore, we recommend having forensic images of your computer and other electronic storage devices made, to the extent you cannot stop using them.

4.  <u>Preserve all passwords, access codes and ID names</u>.

# BLANKROME

October 13, 2022
Page 5

5. <u>Preserve information about how you keep information</u>. Retain all documents that contain your backup and/or archive policies and procedures, your document retention policies, the names of the backup or archive software you use, and the names and addresses of any offsite storage providers that you use.

6. <u>Create an activity log</u>. Preserve logs of network use by any individuals that might be relevant to the litigation and preserve all copies of your backup tapes and the software necessary to reconstruct the data on those tapes, so that there can be made a complete, forensically-qualified image copy of the storage media of each computer hard drive, workstation, and/or network server in your control or custody, whether it is currently in use or not. You will need to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any electronic data described above.

Should you have any further questions, please contact the undersigned.

Regards,

*/s/ Craig M. Flanders*
Craig M. Flanders
Partner

Encl.
cc:     William R. Cruse, Esq.